## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI

ERIC WILLIAMS,

     **PLAINTIFF.**

v.

     **Case No.:**

**WALGREENS,**
Serve Registered Agent:
     CSC-Lawyers Incorporating Service Co.
     221 Bolivar Street
     Jefferson City, MO 63101

     **DEFENDANT.**

## COMPLAINT

COMES NOW Plaintiff Eric Williams, by and through the undersigned counsel of record, and for his Complaint against Defendant Walgreens hereby states and alleges as follows:

## NATURE OF THE ACTION

1.    This is an action for race and sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C § 2000e *et seq.* and the Missouri Human Rights Act for unlawfully discriminating against Plaintiff in the terms and conditions of his employment on the basis of his race and sex and retaliating against him for reporting complaints and engaging in protected activity.

## THE PARTIES

2.    Plaintiff Eric Williams ("Plaintiff") resides in the State of Missouri.

3.     Defendant Walgreens is a foreign corporation that conducts business in the State of Missouri, specifically Jennings, Missouri.

4.     Defendant was the employer of Plaintiff during the time he was employed with the meaning of the Missouri Human Rights Act ("MHRA") and directed and controlled the work of Plaintiff.

## JURISDICTION AND VENUE

5.     Original jurisdiction over this suit is conferred on this Court by 28 U.S.C §§ 1331 as it is brought under as it is brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 200e *et seq.* ("Title VII") and the Missouri Human Rights Act, R.S.Mo. § 213.010, et seq.

6.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the unlawful employment practices occurred in and around Jennings, Missouri, and where Plaintiff suffered the unlawful employment practices and the resultant damages.

7.     All conditions precedent to jurisdiction have occurred or been complied, in that Plaintiff filed his administrative charges in a timely manner with the Equal Employment Opportunity Commission ("EEOC").  Copies of the charges are attached hereto as Exhibit A.

8.     The EEOC issued Plaintiff Notices of Right to Sue and this lawsuit is filed within ninety (90) days of issuance. A copy of the Right to Sue is attached as Exhibit B.

9.     The Missouri Commission on Human Rights also issued Plaintiff a Notice of Right to Sue and this lawsuit is filed within ninety (90) days of issuance. A copy of the Right to Sue is attached as Exhibit C.

## GENERAL ALLEGATIONS

10.     Plaintiff worked for Walgreens for 22 years, most recently as Store Manager.

11.     At all relevant times herein, Plaintiff was qualified for the position he held with Defendant and performed his job duties more than satisfactorily.

12.	Plaintiff is an African American male.

13.	During Plaintiff's tenure with Defendant, he was rarely reprimanded.

14.	On October 2, 2023, Plaintiff was written up for procedural tactics during an investigation of another employee who was stealing.

15.	Plaintiff was accompanied by a manager during the investigation and accused of having a tone that was not in line with company standards.

16.	Plaintiff worked really hard to overcome this mark on his employment record with Defendant and it paid off.

17.	On October 26, 2024, Defendant's Regional Manager, Yoli, promoted Plaintiff to the only Tier 4 store in the district.

18.	Plaintiff led the most improved profitability of a store in the region and was able to earn the promotion within one year of receiving a write-up.

19.	Plaintiff was really excited at this opportunity.

20.	Unfortunately, that excitement was short-lived, as Defendant's store was robbed at gunpoint on November 12th, which was unusual for Plaintiff's location.

21.	The next day, November 13th, an employee started a group chat on social media, inciting panic and fear due to the armed robbery.

22.	Plaintiff called the employee to let her know the information that could be shared and provided her the trauma hotline number at Life 365.

23.	That employee asked Plaintiff for a transfer and he gave her instructions and avenues to do so.

24.	That same day in the same group chat, one of Defendant's pharmacists whose daughter also works at that store location, was upset and expressed outrage, thereby breaking policy.

3

25.    Plaintiff asked that that employee be investigated for her comments and this was detailed in the HR report.

26.    On November 14th, Yoli came by the store to check up on Plaintiff, which was highly unusual.

27.    Yoli commended Plaintiff for handling the robbery correctly and confirmed that he had done everything that needed to be done properly to handle the situation with employees and the store including but not limited to providing the employees with information about the Life 365 hotline and the number to call it.

28.    After that conversation, Plaintiff and Yoli left the office and entered the hallway back to the sales floor.

29.    Yoli spoke about how these things happen and everything will be okay.

30.    Plaintiff was holding back tears and was visibly shaken about the situation.

31.    Yoli then put her hand on Plaintiff's shoulder and told him everything would be okay while he gazed at the floor with tears in his eyes.

32.    Yoli then moved her hand down Plaintiff's bicep and squeezing his bicep as if to get his attention.

33.    Plaintiff naturally flexed his arm and became uneasy.

34.    Yoli gently said, "[E]verything will be okay" and released Plaintiff's bicep.

35.    Yoli then ran her index finger down the rest of Plaintiff's arm which felt dirty and sexual to Plaintiff.

36.    Plaintiff pulled away and did not know what to think.

37.    Yoli reacted in a way like she could not believe Plaintiff was not interested in her, but he was not.

4

38.    Plaintiff immediately thought about his wife, pulled himself together, and walked to the sales floor. I

39.    Plaintiff was uneasy about the situation, but put on his game face at work.

40.    Yoli left the store.

41.    On December 6th, the store was robbed at gunpoint again.

42.    Plaintiff heard nothing from Yoli immediately.

43.    About a week later, December 12th, Yoli interrogated Plaintiff for the actions that occurred on November 13th, when he had allegedly handled the situation expertly as she had indicated before Plaintiff refused her sexual advances.

44.    Plaintiff found this highly unusual that Yoli was even questioning him at all, as he should have been questioned by Defendant's District Manager, Sharome Cole, not the Regional Manager.

45.    Plaintiff had no knowledge about what Yoli was accusing him of as she claimed an employee had recorded a call, but refused to say what Plaintiff allegedly said to the employee, nor would Yoli let Plaintiff listen to the call.

46.    Yoli tried to intimidate Plaintiff, but he was confident that no policy had been broken or that he had done anything wrong, so he answered all of her questions truthfully.

47.    Yoli then admitted to Plaintiff that she had taken over the investigation and would be leading the case.

48.    Plaintiff became highly suspect as to why Yoli was so involved because it seemed to Plaintiff that Yoli was trying to personally punish him for denying her sexual advances.

49.    On December 21st, Yoli scheduled a phone meeting to continue discussing the incident of November 13th.

50.     During this meeting, Plaintiff's new District Manager, Michael, was on the call.

51.     Yoli brought up the alleged recorded call again and that five random employees and customers were interviewed to confirm this employee's allegations.

52.     Yoli then admitted all the allegations, which included, unprofessionalism, cursing consistently on the sales floor, intimidation, failure to inform employees of work resources, and allegedly even being an active gang member, which Plaintiff took as A TOTAL RACIAL STEREOTYPE, unsubstantiated.

53.     Nevertheless, Yoli still punished Plaintiff by giving him a Final Written Warning that was super vague and two sentences long noting  "tone…", which Plaintiff took as ANOTHER RACIST STEREOTYPE, and not giving the Life 365 info to all team members impacted during the robbery.

54.     Plaintiff protested as Yoli had told him that he had done everything correctly.

55.     Plaintiff reminded Yoli that he had personally spoken with all employees involved that day, had verbally given them the information, and posted the Life 365 info at the time clock, office, break room, pharmacy, and hallway the day after robbery totaling five locations.

56.     On December 24th, Plaintiff reached out to HR for policy on the write up process and filed a formal HR complaint on December 28th for sexual harassment, company policy violation, and discrimination. T

57.     Defendant's HR representative tried to talk Plaintiff out of making his complaint, saying going against a Regional Manager would be a very slow process and that it will be handled by high up corporate management.

58.     Nevertheless, Plaintiff proceeded with his claims.

6

59.    Approximately 30 days later, Plaintiff received a call from HR and spoke to the exact details in his complaint.

60.    Plaintiff was informed that there would be follow up in the near future.

61.    Plaintiff also asked about appealing the Final Written Warning as it was issued in violation of policy because the previous write up was over a year old, so should not have been allowed to escalate the current write-up to a final.

62.    Plaintiff did not get a response.

63.    Around the same time on or about January 24, 2025, Defendant's District Personnel conducted a Tiger Walk for stores with high theft and loss.

64.    Four stores in this district were selected for the Tiger Walk, including Plaintiff's store even though he had only been the Store Manager for three months.

65.    Plaintiff was aware of all issues prior to accepting the job and was moving the needle in a positive direction on all aspects.

66.    Plaintiff never received any discipline for shortfalls during this Tiger Walk and showed significant progress on aspects discussed during the Tiger Walk.

67.    However, it was discovered that Plaintiff's Inventory Specialist, who was hired prior to his management, was not supposed to have the functions she was operating with so Plaintiff implemented the necessary changes and documented this information.

68.    Plaintiff believed Defendant was retaliating against him in an effort to terminate his employment with these unfair issues.

69.    On February 20th, Michael terminated Plaintiff for an alleged customer interaction where he allegedly displayed unprofessional body language during an interaction which was captured on video.

7

70.    Once again, Plaintiff was not given details about what gestures were allegedly made and believed this to be more racial stereotyping.

71.    Plaintiff objected as he had not had a customer service write up in twenty years of service with Defendant.

72.    Michael then claimed that Plaintiff was still allowing a non-team lead member to complete management functions, which he was not and refuted that allegation.

73.    Michael then stated, "Ohhh, there is other stuff too" without any explanation to Plaintiff.

74.    Michael told Plaintiff that the decision had been made and since he had a final warning from Yoli, he was fired.

75.    Defendant labeled Plaintiff a Code 56 for gross misconduct making him ineligible for rehire.

76.    Plaintiff, by virtue of his race (African American) and sex (male), is a member of classes of persons protected by law.

77.    At all times relevant herein, the above-named individuals were agents, servants and employees of Defendant and were at all times acting within the scope and course of their agency and employment, or their actions were expressly authorized and ratified by Defendant. Therefore, Defendant is liable for the actions of said persons and/or perpetrators under all theories pled herein.

**COUNT I:**
**Race Discrimination – Title VII**
**Against Defendant**

78.    Plaintiff reasserts the allegations set forth in the preceding paragraphs as if fully set forth herein.

79.    Plaintiff is white and therefore a member of a protected class under Title VII.

80.    Defendant discriminated against Plaintiff in the terms and conditions of his employment.

81. Defendant's conduct constitutes intentional discrimination on the basis of race, with malice and disregard of Plaintiff's federally protected rights.

82. Defendant's conduct constitutes disparate treatment and intentional discrimination of Plaintiff based on race.

83. Yoli's actions and reasoning in issuing Plaintiff a Final Written Warning was racially motivated, even alleging Plaintiff was an active gang member.

84. Plaintiff's race actually played a role in and had a determinative influence in Defendant's disparate treatment of him and the tangible employment actions taken against him, to include his termination.

85. Plaintiff's race was, at the very least, a contributing factor in disparate treatment of him and the tangible employment actions taken against him by Defendant to include his termination.

86. Management level employees perpetuated the discrimination of Plaintiff based on Plaintiff's race.

87. In addition, management level employees knew or should have known of the discrimination based on Plaintiff's race but failed to address the discrimination and further failed to implement effective and appropriate procedures to stop the discrimination.

88. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff suffered intentional discrimination – based upon his race – at the hands of Defendant during the course of his employment.

89. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been, and continues to be, deprived of monetary and non-monetary benefits.

90.     As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered, and continues to suffer, garden variety emotional distress and other non-medical bill related compensatory damages.

91.     By terminating Plaintiff based on his race, Defendant, in effect, condoned, ratified, and/or authorized the race discrimination against Plaintiff.

92.     The conduct of Defendant was intentional, malicious, in conscious disregard for the rights of Plaintiff and others similarly situated, and reflected a conscious indifference to Plaintiff's protected rights, entitling Plaintiff to an award of punitive damages.

93.     Plaintiff is entitled to recover all of his costs, expenses, expert witness fees and attorneys' fees incurred in this matter as well as other appropriate, including equitable, relief.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendant for an award of compensatory and punitive damages, for his costs expended, for his reasonable attorneys' fees and for such other relief as this Court deems just and proper.

**COUNT II:**
**Sex Discrimination – Title VII**
**Against Defendant**

94.     Plaintiff reasserts the allegations set forth in the preceding paragraphs as if fully set forth herein.

95.     Plaintiff is an African American male and is therefore a member of a protected class under Title VII.

96.     Defendant discriminated against Plaintiff in the terms and conditions of his employment.

97.     Defendant's conduct constitutes intentional discrimination on the basis of sex, with malice and disregard of Plaintiff's rights.

98.   Defendant's conduct constitutes disparate treatment and intentional discrimination of Plaintiff based on sex.

99.   During the course of Plaintiff's employment, Defendant's agent, Yoli made sexual advances toward Plaintiff which he refused and was then written up by her.

100.   Plaintiff's sex actually played a role in and had a determinative influence in Defendant's disparate treatment of him and the tangible employment actions taken against him, to include his termination.

101.   Plaintiff's sex was, at the very least, a contributing factor in disparate treatment of him and the tangible employment actions taken against him by Defendant to include his termination.

102.   Management level employees perpetuated the discrimination of Plaintiff based on Plaintiff's sex.

103.   In addition, management level employees knew or should have known of the discrimination based on Plaintiff's age but failed to address the discrimination and further failed to implement effective and appropriate procedures to stop the discrimination.

104.   As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff suffered intentional discrimination – based upon his sex – at the hands of Defendant during the course of his employment.

105.   As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been, and continues to be, deprived of monetary and non-monetary benefits.

106.   As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered, and continues to suffer, garden variety emotional distress and other non-medical bill related compensatory damages.

107.    By terminating Plaintiff based on his sex, Defendant, in effect, condoned, ratified, and/or authorized the age discrimination against Plaintiff.

108.    The conduct of Defendant was intentional, malicious, in conscious disregard for the rights of Plaintiff and others similarly situated, and reflected a conscious indifference to Plaintiff's protected rights, entitling Plaintiff to an award of punitive damages.

109.    Plaintiff is entitled to recover all of his costs, expenses, expert witness fees and attorneys' fees incurred in this matter as well as other appropriate, including equitable, relief.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendant for an award of compensatory and punitive damages, for his costs expended, for his reasonable attorneys' fees and for such other relief as this Court deems just and proper.

### COUNT III:
### Retaliation – Title VII
### Against Defendant

110. Plaintiff reasserts the allegations set forth in the preceding paragraphs as if fully set forth herein.

111. Plaintiff engaged in protected activity by making his complaint about Yoli's sexual advances to Defendant's HR.

106. The timing and circumstances of Plaintiff's termination demonstrate a clear causal connection between his protected activities and the adverse employment action taken against him.

112. Plaintiff's protected activities actually played a role in and had a determinative influence in Defendant's adverse employment actions against him.

113. Plaintiff's protected activities were, at the very least, a contributing factor in Defendant's adverse employment actions against him.

12

114. Plaintiff suffered adverse employment action in that he was terminated from employment after he engaged in protected activities.

115. Management level employees perpetuated the retaliation against Plaintiff.

116. In addition, management level employees knew or should have known of the retaliation against Plaintiff, but failed to address the retaliation and further failed to implement effective and appropriate procedures to stop said retaliation.

117. There is a causal connection between Plaintiff's exercise of protected activity and his termination.

118. As a direct and proximate result of Defendant's retaliatory actions, Plaintiff has suffered and continues to suffer lost wages, lost benefits, emotional distress, humiliation, and other compensatory damages.

119. By terminating Plaintiff in retaliation for engaging in protected activities, Defendant has condoned, ratified, and/or authorized unlawful retaliation in violation of federal law.

120. The conduct of Defendant was intentional, malicious, in conscious disregard for the rights of Plaintiff and others similarly situated, and reflected a conscious indifference to Plaintiff's protected rights, entitling Plaintiff to an award of punitive damages.

121. Plaintiff is entitled to recover all of his costs, expenses, and attorneys' fees incurred in this matter as well as other appropriate, including equitable relief.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendant for an award of compensatory and punitive damages, for his costs expended, for his reasonable attorneys' fees and for such other relief as this Court deems just and proper.

## COUNT IV:
### Violation of the Missouri Human Rights Act – Race Discrimination
### R.S.Mo. § 213.010, *et seq*. Against Defendant

122. Plaintiff reasserts the allegations set forth in the preceding paragraphs as if fully set forth herein.

123. The actions of Defendant constitute unwelcome and discriminatory conduct.

124. Plaintiff's race was a factor in the discriminatory conduct he experienced and suffered.

125. The discriminatory conduct included, but was not limited to, Yoli's actions and reasoning in issuing Plaintiff a Final Written Warning was racially motivated, even alleging Plaintiff was an active gang member, as described herein.

126. Plaintiff's terms and conditions of employment were adversely affected as a result of Defendant's conduct.

127. Defendant's conduct caused Plaintiff degradation, humiliation, anxiety, and emotional distress.

128. The conduct described herein would have detrimentally affected a reasonable person in Plaintiff's position.

129. Management level employees perpetuated the discrimination based on Plaintiff's race.

130. In addition, management level employees knew or should have known of the discrimination based on Plaintiff's race but failed to address the discrimination and further failed to implement effective and appropriate procedures to stop the discrimination.

131. The actions and conduct set forth herein were outrageous and showed an evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and therefore Plaintiff is entitled to punitive damages from Defendant to punish and deter Defendant and others from like conduct.

14

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendant, for a finding that he has been subjected to unlawful discrimination as prohibited by R.S.Mo. § 213.010 et seq.; for an award of compensatory and punitive damages, for his costs expended, for his reasonable attorneys' fees and for such other relief as this Court deems just and proper.

**COUNT V:**
**Violation of the Missouri Human Rights Act – Sex Discrimination**
**R.S.Mo. § 213.010, *et seq*. Against Defendant**

132. Plaintiff reasserts the allegations set forth in the preceding paragraphs as if fully set forth herein.

133. The actions of Defendant constitute unwelcome and discriminatory conduct.

134. Plaintiff's sex was a factor in the discriminatory conduct he experienced and suffered.

135. The discriminatory conduct included, but was not limited to, Yoli's sexual advances as a superior over Plaintiff and his refuting her, as described herein.

136. Plaintiff's terms and conditions of employment were adversely affected as a result of Defendant's conduct.

137. Defendant's conduct caused Plaintiff degradation, humiliation, anxiety, and emotional distress.

138. The conduct described herein would have detrimentally affected a reasonable person in Plaintiff's position.

139. Management level employees perpetuated the discrimination based on Plaintiff's sex.

140. In addition, management level employees knew or should have known of the discrimination based on Plaintiff's age but failed to address the discrimination and further failed to implement effective and appropriate procedures to stop the discrimination.

15

141. The actions and conduct set forth herein were outrageous and showed an evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and therefore Plaintiff is entitled to punitive damages from Defendant to punish and deter Defendant and others from like conduct.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendant, for a finding that he has been subjected to unlawful discrimination as prohibited by R.S.Mo. § 213.010 et seq.; for an award of compensatory and punitive damages, for his costs expended, for his reasonable attorneys' fees and for such other relief as this Court deems just and proper.

## COUNT VI:
## Violation of the Missouri Human Rights Act – Retaliation
## Against Defendant

142. Plaintiff reasserts the allegations set forth in the preceding paragraphs as if fully set forth herein.

143. Defendant's conduct included, but was not limited to, terminating Plaintiff's employment after he engaged in protected activities, including reporting his superior, Yoli to Defendant's HR.

144. Plaintiff's terms and conditions of employment were adversely affected as a result of Defendant's conduct.

145. Defendant's conduct caused Plaintiff degradation, humiliation, anxiety and emotional distress.

146. The conduct described herein would have detrimentally affected a reasonable person in Plaintiff's position.

147. As a proximate result of Defendant's acts as aforesaid, Plaintiff was retaliated against and has suffered termination of his employment.

148. Management level employees perpetuated the retaliation against Plaintiff.

16

149. In addition, management level employees knew or should have known of the retaliation against Plaintiff, but failed to address the retaliation and further failed to implement effective and appropriate procedures to stop said retaliation.

150. The actions and conduct set forth herein were outrageous and showed an evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and therefore Plaintiff is entitled to punitive damages from Defendant to punish and deter Defendant and others from like conduct.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendant, for a finding that he has been subjected to unlawful retaliation as prohibited by Mo.Rev.Stat. 213.010 et seq., for an award of compensatory and punitive damages, for his costs expended, for his reasonable attorneys' fees and for such other relief as this Court deems just and proper.

### COUNT VII – HOSTILE WORK ENVIRONMENT IN VIOLATION
#### of RSMo. § 213.010 et seq.
#### Against Defendant

151. Plaintiff incorporates and adopts by reference the preceding paragraphs as though fully set forth herein.

152. During Plaintiff's employment with Defendant, Defendant subjected Plaintiff to outrageous, extreme, atrocious, intolerable, severe and unwelcomed conduct based on Plaintiff's race and sex and subsequent retaliation.

153. At all times relevant herein, Defendant's discrimination against Plaintiff based on Plaintiff's race and sex was outrageous, extreme, atrocious, intolerable, severe, unwelcomed, and objected to by Plaintiff.

154. Defendant's discriminatory conduct against Plaintiff based on Plaintiff's race and sex was sufficiently outrageous, extreme, atrocious, intolerable, severe, and pervasive that a reasonable person in Plaintiff's position would find Plaintiff's work environment to be hostile and/or abusive.

155. Plaintiff's race and sex was a motivating factor in Defendant's actions toward and adverse employment decisions relating to Plaintiff.

156. Defendant's actions toward and adverse employment decisions relating to Plaintiff had the purpose and effect of unreasonably interfering with Plaintiff's ability to perform his job and duties.

157. Defendant knew or should have known of the outrageous, extreme, atrocious, intolerable, severe, pervasive, discriminatory conduct against Plaintiff based on Plaintiff's race and sex, as Plaintiff expressed his concerns of said conduct to Defendant.

158. Defendant failed to exercise reasonable care to prevent and/or promptly correct the outrageous, extreme, atrocious, intolerable, severe, and pervasive conduct by Defendant, including but not limited to, one or both of the following: a.  Failing to make good-faith efforts to establish and enforce policies to prevent illegal discrimination against its employees through race and sex and/or retaliation; and/or b.  Failing to properly train and/or otherwise inform their supervisors and employees concerning their duties and obligations under civil rights laws, including the Missouri Human Rights Act.

159. Plaintiff's race and sex, when repeatedly reporting the discrimination and harassment against Plaintiff by Defendant, including but not limited to, through Defendant's agents, owners, supervisors and/or employees, actually played a role and was a determinative influence in disparate treatment of Plaintiff and the tangible employment actions taken against him by Defendant.

160. Through Defendant's conduct, as described herein, Defendant violated RSMo. § 213.055.

161. As a direct and proximate result of Defendant's outrageous, extreme, atrocious, and intolerable conduct and/or omissions, as outlined herein, and, in violation of RSMo. § 213.055, Plaintiff suffered intentional discrimination at the hands of and by Defendant during the course of his employment with Defendant.

162. As a direct and proximate result of Defendant's outrageous, extreme, atrocious, and intolerable conduct and/or omissions, as outlined herein, Plaintiff has been, and continues to suffer monetary and non-monetary damages.

163. As a direct and proximate result of Defendant's outrageous, extreme, atrocious, and intolerable conduct and/or omissions, Plaintiff has and continues to suffer, garden variety emotional distress and other compensatory damages.

164. By failing to take prompt and effective remedial action, Defendant effectively condoned, ratified, authorized, aided, abetted, incited, compelled, and/or coerced and/or attempted to do so the discrimination against Plaintiff based on Plaintiff's race and sex and retaliation against Plaintiff.

165. Defendant's outrageous, extreme, atrocious, severe, and intolerable conduct was willful, wanton, and malicious and showed complete indifference to and/or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendant and/or to deter them and others from like conduct in the future, as provided for under law.

166. Plaintiff is entitled to recover reasonable attorneys' fees from Defendant, as provided for under the MHRA.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendant, for a finding that he has been subjected to a hostile work environment as prohibited by Mo.Rev.Stat.

19

213.010 et seq., for an award of compensatory and punitive damages, for his costs expended, for his reasonable attorneys' fees and for such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby requests trial by jury of all issues triable by jury.

Respectfully submitted,

**LAUREN ALLEN, LLC**

By: */s/ Lauren Perkins Allen*
Lauren Perkins Allen, #49845MO
P.O. Box 8533
Prairie Village, Kansas 66208
Telephone: 816.877.8120
Facsimile: 816.817.1120
Email:  lpa@laurenallenllc.com

**ATTORNEY FOR PLAINTIFF**

20